# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of

WILLIAM VOGEL,

      Appellant/Cross Respondent,

and

ALICE VOGEL,

      Respondent/Cross Appellant.

No. 83430-4-I

DIVISION ONE

UNPUBLISHED OPINION

APPELWICK, J. — William Vogel argues the trial court unlawfully modified the decree of dissolution. The parties' retirement accounts had been divided based on valuations made two years before trial. The decree was silent on the disposition of gains and losses accruing between the valuation and the actual transfer of the asset. The trial court clarified that its intent was that gains or losses were included in the division of the accounts. We affirm.

## FACTS

Alice and William Vogel separated on March 6, 2017, after being married for almost 34 years. William[1] petitioned for dissolution on March 21, 2017. The court divided the Vogels' property and dissolved the marriage on October 14, 2019.

_____

[1] Because the parties share a last name, we refer to them by their first names. We mean no disrespect.

Citations and pin cites are based on the Westlaw online version of the cited material.

In splitting the Vogels' retirement and financial accounts, the trial court's stated intention was for each party to receive half of the retirement accounts. This included their thrift savings plan[2] (TSP) accounts. William's TSP was valued in 2017 at $339,623.40. Alice's TSP was valued at $23,975.00. She was awarded her account and an equalizing portion from William's account.

On January 7, 2020, William sent Alice a proposed TSP account plan transfer order stating that she would get a fixed dollar amount of $157,824.00, with no earnings. William stated that Alice never responded to this proposal.

On September 17, 2020, Alice noted a hearing for presentation of final orders implementing the division of the pension and TSP accounts. For the TSP transfer order, she proposed language indicating that she had been awarded $152,025.21, "together with earnings and losses as of August 1, 2019 (the date of the Court's ruling)." On October 8, 2020, William moved to enforce the dissolution decree and proposed his own orders implementing the division of accounts, including the TSP.

On December 1, 2020, William responded to Alice's motion. He stated that even though Alice is now raising the issue of whether she gets gains or losses on the TSP, "[t]his was not in the court order."

---

[2] "The Thrift Savings Plan (TSP) is a retirement savings and investment plan for Federal civilian employees and members of the uniformed services. The TSP offers the same kinds of savings and tax benefits that many private corporations offer to their employees in a 401(k) plan." 20 ELIZABETH A. TURNER, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW § 32:22, at 231 (2nd ed. 2022).

On December 4, 2020, the court heard oral argument on whether gains and losses were to be included in the TSP transfer orders. Alice argued "[A]bsent an order that says it will not include gains or losses, it should." She proposed that she should receive gains or losses to the account over the two years between their separation in March 2017 and dissolution in 2019. William argued that the court performed a specific calculation, which did not include gains and losses. The issue had not been brought to the court's attention during the trial. The court stated, "[W]ith respect to any gains or losses, what Mr. Vogel is asking is that the court give him a windfall based on the amount of time that has passed." The court orally ruled that gains and losses were to follow the respective shares of the TSP account.

On January 25, 2021, the court entered an order on the motion to enforce the decree to clarify the TSP division order must account for gains and losses attributable to the parties' share of the account. William appeals the order.

DISCUSSION

I. Standard of Review

The interpretation of a dissolution decree is a question of law. Chavez v. Chavez, 80 W[n.] App. 432, 435, 909 P.2d 314 . . . (1996). Questions of law are subject to de novo review by the appellate court. McDonald v. State Farm Fire and Cas[.] Co., 119 W[n.]2d 724, 730-31, 837 P.2d 1000 (1992). If a decree is ambiguous, the reviewing court seeks to ascertain the intention of the court that entered it by using the general rules of construction applicable to statutes and contracts. See In re Marriage of Gimlett, 95 W[n.]2d 699, 704-05, 629 P.2d 450 (1981); Kruger v. Kruger, 37 W[n.] App. 329, 331, 679 P.2d 961 (1984).

3

> A trial court does not have the authority to modify even its own decree in the absence of conditions justifying the reopening of the judgment. RCW 26.09.170(1); Kern v. Kern, 28 W[n].2d 617, 619, 183 P.2d 811 (1947). An ambiguous decree may be clarified, but not modified. RCW 26.09.170(1); In re Marriage of Greenlee, 65 W[n.] App. 703, 710, 829 P.2d 1120 . . . (1992). A decree is modified when rights given to one party are extended beyond the scope originally intended, or reduced. A clarification, on the other hand, is merely a definition of rights already given, spelling them out more completely if necessary. Rivard v. Rivard, 75 W[n].2d 415, 418, 451 P.2d 677 (1969).

In re Marriage of Thompson, 97 Wn. App. 873, 878, 988 P.2d 499 (1999).

II.    Clarification of Decree of Dissolution—Property Division

With respect to the division of William's TSP account the decree of dissolution provided:

> 2. $152,025.21 of petitioner's TSP account number xxxx8902 to be transferred to respondent's Washington State Deferred Compensation account by Retirement Benefits Court Order.
>
> Calculated as follows: [Petitioner's] TSP of $339,623 plus [Respondent's] TSP of $23,975 = $363,598 / 2 = $181,799 - $23,975 (respondent's TSP) - $5,798.79 (amount owed to petitioner after property offset - see section 20 below) = $152,025.21 (plus 100% of respondent's TSP of $23,975)

(Emphasis omitted.)[3] The express language of this provision does not address the disposition of any gains or losses on the account between the date in 2017 on which the account was valued and the date of the decree or the date of actual transfer directed in the decree.[4] The plain language of the decree is not dispositive.

---

[3] The decree inadvertently reversed the petitioner and respondent.
[4] Both parties stipulate that the valuation was made at the time of separation.

4

William argues the language of the decree was not ambiguous and that Alice was awarded a fixed sum. William argues that under the guise of a clarification, the trial court impermissibly modified the October 14, 2019 decree to give Alice a share of the TSP's gains and losses. Alice argues that the trial court stated its express intent to equalize the division of the accounts. Her portion was calculated based on the 2017 valuation, but she had yet to receive the money as of the December 4, 2020 hearing. She argues the court's intent to equalize the division of the retirement accounts cannot be carried out if she is denied the gains on her portion of the account.

These interpretations of the decree, though diametrically opposed, are reasonable. We conclude that the language is ambiguous and that the trial court was correct to attempt to clarify the meaning of the decree.[5]

The trial court was clear about its intent when entering the decree: "The Court's intention is that each party receive half of all of the retirement and financial accounts. Specifically, that includes the thrift savings accounts." And, the court repeated, "The PERS [Public Employees Retirement System] and FERS [Federal Employees Retirement System] accounts are going to be divided half each." The court awarded maintenance to Alice. In doing so it noted a "limited ability of the Court to use a property division to do something different to equalize the parties' positions." The trial court's stated intention at this time was to equalize the parties' monthly income until retirement, and at retirement, to divide up the monthly

---

[5] Neither party has argued the alternative theory that the trial court failed to dispose of the gains at the time of the decree.

5

benefits equally. In section 20 of the decree, the court reconciled the division of the real property and 10 other items to determine an equalizing adjustment of $5,789.79 was owed to William. It is clear that the intention of the court throughout was to equalize the position of the parties.

Neither party advised the court that the TSP accounts had gains between the time of valuation and the trial some two years later. We have no doubt that if this information had been brought to the court's attention, the trial court would have divided it consistent with its overall equal division. That means either the court would have divided the gains or losses equally or, at a minimum, divided the gains and losses in proportion to their respective share in the account's 2017 value.[6]

The trial court did not err when it clarified the decree as to the right to gains. This determination was not a modification.

III.    Attorney Fees

Alice argues that the court should award her attorney fees under RCW 26.09.140 and RAP 18.1(a). RAP 18.1 allows this court to grant fees and expenses if the party requests them and applicable law grants the right to recover them. RCW 26.09.140 states in part, "Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." Though Alice is the

---

[6] William has not argued that any gain on Alice's account must be included in the division. Since Alice was awarded all of her TSP account, she properly retained any gains on the account.

prevailing party, the parties were left by the trial court in roughly equal positions financially. We decline to award fees.

We affirm.[7]

_Appelwick, J._

WE CONCUR:

_____     _Andrus, A.C.J._

---

[7] Alice raises a conditional cross appeal requesting that we consider additional issues related to the dissolution. Given our decision on William's appeal, we need not reach Alice's cross appeal claims.